## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SCOTIABANK DE PUERTO RICO et al., | |
| Plaintiffs, | |
| v. | CIVIL NO. 16-2736 (FAB) |
| ALEJANDRO GARCÍA PADILLA et al., | |
| Defendants. | |

## <u>NOTICE OF AUTOMATIC STAY</u>

**TO THE HONORABLE COURT:**

COME NOW, co-defendants Hon. Alejandro García Padilla, Hon. Juan C. Zaragoza Gómez and Hon. Luis Cruz Batista, in their respective official capacities (collectively "defendants"), specially appearing and without submitting to the jurisdiction or venue of this Court, and hereby state and pray as follows:

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on September 28, 2016 (Dkt. No. 1), almost three months after the enactment of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 <u>et seq.</u>, on June 30, 2016. On October 17, 2016, plaintiffs filed an amended complaint. Dkt. No. 4. "An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and 'no longer performs any function in the case.'" <u>Connectu LLC v. Zuckerberg</u>, 522 F.3d 82, 91 (1st Cir. 2008) (citations omitted).

Plaintiffs admit that most if not all the causes of action in their amended complaint are stayed by section 405(b) of PROMESA. As a result, they affirmatively seek relief from the

PROMESA stay pursuant to §§ 405(e) or (g) of the Act. Dkt. No. 4 at 15. However, they argue that, because Counts 2 and 3 of the amended complaint seek relief for alleged violations of PROMESA itself, these claims could not have been commenced before the enactment of PROMESA and are not stayed. Id.

As will be shown below, all of plaintiffs' causes of action in the amended complaint, including but not limited to Counts 2 and 3, are currently stayed by PROMESA, and plaintiffs have not shown cause to lift the stay to allow these claims to proceed. In the alternative, and in the exercise of this Court's inherent power to manage its docket, the entire case should be stayed because allowing piecemeal litigation would contravene the express purposes of PROMESA.

## II.      PROMESA AND CASE BACKGROUND

### A.      The purpose of PROMESA and its stay provisions

Congress enacted PROMESA in response to "a fiscal emergency in Puerto Rico." PROMESA § 405(m)(1).  In particular, Congress determined that "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico is necessary, involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." Id. § 405(m)(4).  To that end, Congress found that "an immediate—but temporary—stay is essential to stabilize the region for the purposes of resolving this territorial crisis." Id. § 405(m)(5).

As Congress explained, "[t]he stay advances the best interests common to all stakeholders, including but not limited to a functioning independent Oversight Board created pursuant to this Act to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation that may have been commenced prior to the effectiveness or upon expiration of the stay." Id. § 405(m)(5)(A).  Further, "[t]he stay is limited in nature and narrowly tailored to achieve the purposes of this Act, including to ensure all creditors have a fair opportunity to consensually

renegotiate terms of repayment based on accurate financial information that is reviewed by an independent authority or, at a minimum, receive a recovery from the Government of Puerto Rico equal to their best possible outcome absent the provisions of this Act." <u>Id</u>. § 405(m)(5)(B). The stay will "allow the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits." <u>Id</u>. § 405(n)(2).

Immediately upon enactment, PROMESA thus automatically stayed, "with respect to a "Liability," "the commencement or continuation ... of a judicial ... proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of this Act." <u>Id</u>. § 405(b)(1).[1] PROMESA also automatically stayed the commencement or continuation of a judicial proceeding to recover a "Liability Claim" against the Government of Puerto Rico that arose before the enactment of the Act. <u>Id</u>.

PROMESA defines a "Liability" as follows:

The term "Liability" means a bond, **loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money**, including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form, of which—

(A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and

(B) the date of issuance or incurrence precedes the date of enactment of this Act.

PROMESA § 405(a)(1) (emphasis added).

PROMESA defines a "Liability Claim," in relevant part, as follows:

The term "Liability Claim" means, as it relates to a Liability....The right to an **equitable remedy for breach of performance if such breach gives rise to a right**

---

[1] The term "Government of Puerto Rico," as defined in PROMESA, includes officers such as defendants, sued in their official capacity (§ 405(i)(1)), as well as government instrumentalities (§ 5(11)).

**to payment**, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

PROMESA, § 405(a)(2)(B) (emphasis added).

Plaintiff Scotiabank de Puerto Rico ("Scotiabank") alleges that it is a Puerto Rico based bank that has extended substantial credit to the Metropolitan Bus Authority ("AMA," for its acronym in Spanish) pursuant to a loan agreement dated March 30, 2012 (hereinafter the "Loan Agreement"). Dkt. No. 4 at ¶ 3. Plaintiffs allege that the Bank of Novia Scotia ("BNS") paid to Scotiabank past due amounts under the Loan Agreement and as a result became subrogated by operation of law to all of Scotiabank's rights under the Loan Agreement. Id. at ¶ 6. This loan is clearly a "Liability" as defined in PROMESA. For purposes of the PROMESA automatic stay, it makes no difference whether plaintiffs' asserted right to relief arises under the Loan Agreement itself or some other source of law, such as the Constitutions or statutes of the United States or Puerto Rico. The statute specifies that a "Liability" includes "rights, entitlements, or obligations ... related to such a ... loan," **regardless** of "whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law." PROMESA § 405(a)(1). This Court has already stayed similar actions containing constitutional claims challenging PR Act No. 21-2016, pursuant to PROMESA. See, e.g., Brigade Leveraged Capital Structures Fund Ltd. v. The Government Development Bank for Puerto Rico, Civ. No. 16-1610 at Dkt. No. 99.

Section 405 of PROMESA, which was modelled after § 362 of the Bankruptcy Code, 11 U.S.C. § 362, not only stays certain claims that were or could have been commenced before the enactment of PROMESA, but also stays, among others:

- any act to obtain possession of property of the Government of Puerto Rico or of property from the Government of Puerto Rico or to exercise control over property of the Government of Puerto Rico;

- any act to create, perfect, or enforce any lien against property of the Government of Puerto Rico;
- any act to create, perfect, or enforce against property of the Government of Puerto Rico any lien to the extent that such lien secures a Liability Claim that arose before the enactment of this Act;
- any act to collect, assess, or recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of this Act.

48 U.S.C. § 2194(b)(3-6).

## B. Plaintiffs' claims

Plaintiffs allege that, pursuant to the Loan Agreement, Scotiabank made a loan to AMA in the original principal amount of $37,543,294 (the "AMA Loan"). Dkt. No. 4 at ¶ 3. Plaintiffs claim that the AMA Loan is secured by an assignment of the Commonwealth's tax on the sale of cigarettes (the "Cigarette Tax") allocated to AMA pursuant to PR Act 31-2013 ("Act 31"). Id. at at ¶ 4. Plaintiffs allege that the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, PR Act No. 21-2016 ("Act 21")—a Commonwealth statute enacted before PROMESA to deal with the looming financial crisis—as well as Executive Order 30-2016, issued pursuant to Act 21, have impaired plaintiffs' contractual and property rights with respect to the Cigarette Tax revenues and have harmed them. Dkt. No. 4 at ¶ 9. Plaintiffs allege that these actions violate §§ 204(c)(3), 303(1) and 303(1) of PROMESA. Plaintiffs also seek relief pursuant to the Contracts, Takings and Due Process clauses of the Constitutions of the United States and Puerto Rico.

Plaintiffs seek declaratory and injunctive relief against officials of the Commonwealth, requesting, among other remedies, an order "[e]njoining Defendants from diverting the transfers of the Cigarette Tax Revenues and requiring them to deposit the Cigarette Tax Revenues in an account administered by the Court (or otherwise pursuant to a mechanism approved by the Court)." Dkt. No. 4 at 23. Because plaintiffs' standing to bring all their claims hinges on their status as creditors of AMA pursuant to the Loan Agreement, their claims clearly "relate to" their rights with

respect to such loan. But for their claimed interest in this loan, plaintiffs would have no claims. These claims are clearly stayed by PROMESA, even if some are purportedly brought under sections of PROMESA itself.

## III.   THE AMENDED COMPLAINT IS STAYED BY PROMESA

All claims in plaintiffs' amended complaint, including Counts 2 and 3, are stayed by PROMESA.  Count 2 alleges violations of §§ 204(c)(3) 303(1) and 303(3) of PROMESA. Dkt. No. 4 at 16-17. Count 3 alleges that Act 21 is preempted by 11 U.S.C. § 903 and is in conflict with §§ 4, 303(1) and 303(3) of PROMESA. Dkt. No. 4 at 17-18. Although in Count 1 of their amended complaint plaintiffs seek relief from the PROMESA stay, plaintiffs hint that Counts 2 and 3 of their amended complaint are not stayed by § 405(b) of PROMESA because they rest on provisions of PROMESA itself and hence could not have been commenced before the enactment of PROMESA. Id. at ¶ 48. Accordingly, they contend, no relief from stay is needed to prosecute these claims.  This simplistic view of the PROMESA stay fails to take into account the broader scope of the stay provisions in § 405(b) of PROMESA, modelled after § 362 of the Bankruptcy Code, and fundamentally misconstrues the relief sought by Counts 2 and 3.

### A.   Counts 2 and 3 are stayed by § 405(b)(1) of PROMESA because that section Stays "an action or proceeding."

Plaintiffs concede that the majority of claims in the amended complaint are with respect to a Liability and could have been brought before enactment of PROMESA, and thus are stayed.  In arguing that Counts 2 and 3 are nonetheless unaffected by the PROMESA stay, plaintiffs overlook the text of the statute. Section 405(b)(1) of PROMESA mandates a stay of the commencement or continuation of an "action or proceeding." It does not, as plaintiffs suggest, apply to a portion of the claims brought in an action or proceeding.  With the filing of plaintiffs' stayed claims, the entire "action or proceeding" is thus subject to PROMESA's automatic stay and relief may only

be granted for: (1) cause "after notice and a hearing" (§405(e)(2)), or if (2) "necessary to prevent irreparable damage" if there is not an opportunity for a hearing (§405(g)).

**B.      Counts 2 and 3 are stayed by § 405(b)(6) of PROMESA.**

Counts 2 and 3 of plaintiffs' amended complaint are stayed by § 405(b)(6) of PROMESA. This provision stays "any act to collect, assess, or recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of this Act." 48 U.S.C. § 2194(b)(6).

In connection with their claims, plaintiffs seek an order "[e]njoining Defendants from diverting the transfers of the Cigarette Tax Revenues and requiring them to deposit the Cigarette Tax Revenues in an account administered by the Court (or otherwise pursuant to a mechanism approved by the Court)." Dkt. No. 4 at 23. These forms of injunctive relief, which are designed to freeze government assets, garnish the same from third parties, and attach or segregate them for the eventual payment of the amounts allegedly due under the Loan Agreement, are "acts to collect" pursuant to § 405(b)(6) of PROMESA, modeled after §362(a)(6) of the Bankruptcy Code, 11 U.S.C. § 362(a)(6). See, e.g., Matter of Holland, 21 B.R. 681, 687 (Bankr. N.D. Ind. 1982) (Section 362(a)(6) should be read "to be broader in its prohibitions than just acts against the debtor. The language of the stay encompasses any act to collect a claim against the debtor.").

The fact that the funds plaintiffs intend to freeze, garnish, attach, or segregate will not be immediately turned over to plaintiffs is irrelevant to the applicability of § 405(b)(6). See Divane v. A and C Elec. Co., Inc., 193 B.R. 856, 860 (N.D. Ill. 1996) ("Section 362(a)(6)'s . . . does not require that the creditor take some action to obtain possession of or to exercise control over the debtor's property . . . . That is because the aim of Section 362(a)(6) is not the protection of the debtor's property as such, but rather the protection of the debtor itself."). By its own terms §362(a)(6), and by analogy § 405(b)(6) of PROMESA, applies to "any act" and "prevents creditors

from attempting in any way to collect a prepetition debt." Id. at 859 (quoting In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985)).

In the bankruptcy realm, § 362(a)(6) of the Bankruptcy Code stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." In interpreting this statutory provision, "the word 'collect' is not to be given a narrow, legal-action type of meaning." In re Guinn, 102 B.R. 838, 842 (Bankr. N.D. Ala. 1989). "The language in Section 362(a)(6) is extremely broad in scope and encompasses any act to collect a pre-petition claim from a debtor." In re Trevino, 535 B.R. 110, 149 (Bankr. S.D. Tex. 2015) "Eventual, or even planned, collection of a debt may constitute a violation of § 362(a)(6)." Id.

A number of courts have held this provision applicable to actions regarding post-petition transfers or payments and considered actions to recover any such transfers—even actions against non-debtor, third parties—to involve "a claim against the debtor that arose before the commencement of the case," given that, but for such a claim, there would be no action available regarding the post-petition transfer. See, e.g., In re Teleservices Grp., Inc., 463 B.R. 28, 35 (Bankr. W.D. Mich. 2012) ("In sum, postpetition fraudulent transfer actions by creditors are prohibited by the automatic stay because they cannot stand independent of that creditor's claim against the debtor."); In re Colonial Realty Co., 980 F.2d 125, 132 (2d Cir. 1992) ("While a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor.' Absent a claim against the debtor, there is no independent basis for the action against the transferee.")); In re Saunders, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989) (same); see also Matter of Hellums, 772 F.2d 379, 381 (7th Cir. 1985) ("We hold that Congress intended the stay of section 362(a)(6) to apply to the automatic (as well as coerced) transfer and application of post-petition funds to the prepetition debts of Chapter 7 debtors.").

It would be disingenuous for plaintiffs to claim that because they are not actually receiving money at this time, their efforts to freeze assets of the Commonwealth, including avoiding transfers of Cigarette Tax revenues, are not "acts to collect" pursuant to § 405(b)(6) of PROMESA. Plaintiffs' request for injunctive relief is clearly stayed, regardless of its legal basis or whether it involves alleged acts or omissions that took place post-PROMESA.

### C.  Counts 2 and 3 are stayed by §405(b)(3) of PROMESA.

Section 405(b)(3) of PROMESA stays "any act to obtain possession of property of the Government of Puerto Rico or of property from the Government of Puerto Rico or to exercise control over property of the Government of Puerto Rico." 48 U.S.C. § 2194(b)(3). In their amended complaint, plaintiffs seek an injunction freezing Cigarette Tax revenues and enjoining certain transfers pursuant to Act 21 and Executive Order 30-2016. Despite plaintiffs' best efforts to argue otherwise, the Commonwealth's actions are merely exercises of control over the Commonwealth's property.

As recently explained by the bankruptcy court in In re Weidenbenner, 521 B.R. 74 (Bankr. S.D.N.Y. 2014):

> Congress amended the Code in 1984 to add the phrase "exercise control over" property of the estate. Amplifier Research Corp. v. Hart, 144 B.R. 693, 694 (E.D.Pa.1992). Although there is no legislative history explaining why this amendment was added, In re Albion Disposal, Inc., 217 B.R. 394, 405 (W.D.N.Y.1997), the court in Amplifier stated that "Congress evidently believed that the purpose of staying acts for possession was defeated if plaintiffs were still free to try to control or otherwise direct how the debtor used his property. Clearly at some point, 'control' over another's property becomes constructive possession." Id. The phrase "to exercise control" should be interpreted in a way that gives effect to its plain meaning. Thompson v. GMAC, LLC, 566 F.3d 699, 702 (7th Cir. 2009). To "exercise control" is "'to exercise restraining or directing influence over' or 'to have power over.'" Id. ("Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the commonsense meaning of the word.").

Id. at 79. See also Shimer v. Fugazy (In re Fugazy Exp., Inc.), 982 F.2d 769, 776 (2d Cir.1992) (Section 362(a)(3) also precludes "any act to transfer control over property of the estate.").

Plaintiffs' request for injunctive relief pursuant to Counts 2 and 3 of their amended complaint is nothing more than a demand to prohibit the Commonwealth from using its own assets. Plaintiffs intend to obtain injunctive relief by freezing Cigarette Tax revenues and requiring that they be deposited in an account administered by the Court for the eventual payment of AMA's obligations. These requested remedies clearly foreclose, limit, or prohibit the Commonwealth's beneficial use of its own assets. Regardless of the merits of plaintiffs' claims, these are clearly acts to exercise control over property of the Government of Puerto Rico that are stayed pursuant to § 405(b)(3) of PROMESA.

The current use of the Cigarette Tax revenues is governed by Act 21 and the Executive Orders issued pursuant to it. Rather than preserving the status quo, plaintiffs pretend to use certain statutory provisions in PROMESA to alter the status quo, invalidate Act 21 and the Executive Orders and seek an injunction garnishing, freezing, attaching and/or segregating Cigarette Tax revenues for the payment of AMA's alleged debt to plaintiffs. Plaintiffs' purported remedies would severely affect the ability of the Commonwealth to operate during this time of fiscal crisis, which is precisely what PROMESA sought to prevent. See 48 U.S.C. § 2194(n). See also I.C.C. v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991) ("The automatic stay is designed to effect an immediate freeze of the status quo at the outset of the chapter 11 proceedings, by precluding and nullifying most postpetition actions and proceedings against the debtor in nonbankruptcy fora, judicial or nonjudicial, as well as most extrajudicial acts against the debtor, **or affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest**." (emphasis added)).

**D.      Counts 2 and 3 are stayed by §§405(b)(4) and (b)(5) of PROMESA.**

Section 405(b)(4) of PROMESA stays "any act to create, perfect, or enforce any lien against property of the Government of Puerto Rico," while § 405(b)(5) stays "any act to create, perfect, or enforce against property of the Government of Puerto Rico any lien to the extent that such lien secures a Liability Claim that arose before the enactment of this chapter." 48 U.S.C. § 2194(b)(4) and (b)(5). In interpreting analogous provisions in § 362 of the Bankruptcy Code, courts have held that under § 362(a)(4), "the time in which the claim arose is irrelevant." Matter of Reserves Dev. Corp., 78 B.R. 951, 958 (W.D. Mo. 1986).

In Matter of Reserves, the West Virginia Attorney General's office ("appellants") filed suit on behalf of the West Virginia Commissioner of Labor and eleven of the debtors' employees, seeking recovery of unpaid post-petition wages. Appellants obtained a prejudgment attachment of a coalwashing facility. Plaintiffs-appellees held a security interest in certain coalwashing units located on the facility. Id. at 954. The Bankruptcy Court concluded that the appellants' attachment of the coalwashing facility was in violation of the automatic stay and voided the attachment. Id. On review before the district court, appellants argued that the stay provided by section § 362(a)(1) of the Bankruptcy Code was inapplicable, because the wage claim justifying the attachment arose post-petition. Id. at 958. The district court rejected this theory and concluded that the operative provision was § 362(a)(4), which does not contain a temporal limitation similar to § 362(a)(1). The district court went on to hold as follows:

> ...appellants sought to attach the debtors' coalwashing unit for the purpose of securing the payment of past-due wage claims. The net effect of such an attachment would be to create a lien on the property and give appellants a priority interest over any intervening creditor pending the outcome of the pending state court action. Thus, appellants' attempt to attach property of the debtors' bankruptcy estate was indeed an act to "create" or "perfect" a lien on this property, and this Court holds that the Bankruptcy judge correctly applied § 362(a)(4) as the governing provision.

11

Id.

Courts have further determined that the freezing of assets by a creditor "violated the automatic stay as an act to enforce a lien against property of the estate." In re Patterson, 967 F.2d 505, 512 (11th Cir. 1992). It must be noted that whether the creditor takes affirmative steps to be in actual or constructive possession of the asset is not dispositive. The definition of "act" pursuant to § 362(a)(4) is so broad that at times not even an affirmative act of the creditor may be required for the stay provision to apply.  See In re Heavey, 549 B.R. 1, 10 (Bankr. E.D.N.Y. 2016) ("For purposes of § 362 the Second Circuit has interpreted 'act' broadly, and it is well established that an 'act' for purposes of a § 362(a)(4) violation need not be significant, or even be an 'act' at all. For example, the creation or perfection of a post-petition lien violates the automatic stay even when such creation or perfection becomes effective by operation of law.") (internal citations omitted); see also In re Penfil, 40 B.R. 474, 476 (Bankr. E.D. Mich. 1984) ("the mere recording of a Sheriff's deed after a foreclosure sale is, in and of itself, a violation of the automatic stay of § 362(a) since it is "an act to . . . enforce any lien against property of the estate.").

Plaintiffs in this case allege in their amended complaint that the AMA Loan is secured by an assignment of the Cigarette Tax. Dkt. No. 4 at ¶ 4. Accepting plaintiffs' allegations as true for purposes of this Notice, their request to attach, garnish, freeze and/or segregate Cigarette Tax revenues for the eventual payment of the AMA Loan is clearly an act to create, perfect, or enforce a lien under § 405(b)(4) of PROMESA, regardless of when the claim arose. Hence, plaintiffs' requested relief is stayed by § 405(b)(4) of PROMESA, or by § 405(b)(5) to the extent the alleged lien being enforced secured a Liability Claim that arose before the enactment of PROMESA.

IV.  **IN THE ALTERNATIVE, THE ENTIRE CASE SHOULD BE STAYED BECAUSE ALLOWING PIECEMEAL LITIGATION WOULD CONTRAVENE THE EXPRESS PURPOSES OF PROMESA.**

Plaintiffs' amended complaint, including Counts 2-3, should be stayed pursuant to PROMESA for the reasons described above. But if the Court disagrees and concludes that not all counts are stayed, it should nevertheless exercise discretion to stay the entire case rather than permitting piecemeal litigation in contravention of the purpose of the PROMESA stay.

It is well established that "federal district courts possess the inherent power to stay pending litigation . . . ." Marquis v. F.D.I.C., 965 F.2d 1148, 1154 (1st Cir. 1992). As outlined above, plaintiffs concede that most, but not all, of their claims are subject to the PROMESA stay. In so doing, plaintiffs attempt to transform PROMESA into something Congress expressly declared it is not meant to be: a piecemeal restructuring mechanism. See PROMESA § 405(m)(4).  This fragmented vision of the PROMESA stay not only contradicts the need for the breathing space mandated by PROMESA but is inconsistent with the approach taken by many courts in restructuring proceedings. For instance, the automatic stay under Section 362 of the Bankruptcy Code—the language of which is analogous to PROMESA—is routinely applied in a broad, exhaustive fashion. See, e.g., In re Leonard, 231 B.R. 884, 889 (Bankr. E.D. Pa. 1999) ("As a general rule, the automatic stay applies to all claims, even those that may be excepted from discharge; in this regard, the scope of the stay is broad."). Indeed, one of Section 362's principal goals is to protect creditors and debtors alike by avoiding piecemeal litigation that may result in inconsistent or inequitable outcomes.

Section 362 is instructive here, for Congress enacted PROMESA to accomplish similar ends. PROMESA embodies a "comprehensive approach to fiscal, management, and structural problems and adjustments . . . involving [an] independent [O]versight [Board] and a Federal

statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4). To be sure, a core purpose and benefit of having an Oversight Board at the center of the PROMESA process is the capability to organize a consolidated approach to restructuring the Commonwealth's tax-supported debts. Plaintiffs' bid for a splintered disposition of their claims, however, precludes such a consolidated and comprehensive course of action, and is further evidence that the entire case is simply an action to recover payments from the Commonwealth or its instrumentalities. Accordingly, plaintiffs' quest to charge forward invites this Court to spurn Congress's express objectives in passing PROMESA. The Commonwealth defendants respectfully submit that this invitation should be declined.

## V.    PLAINTIFFS HAVE FAILED TO SHOW "CAUSE" TO LIFT THE STAY

### A.    Standard of review under PROMESA

PROMESA authorizes this Court, after notice and a hearing, to "grant relief from the stay provided under subsection (b) of this section **only** for cause shown." See PROMESA § 405(e)(2)).  Otherwise, a court may grant relief from the stay only where "irreparable damage to the interest of an entity in property" will occur "before there is an opportunity for notice and a hearing." Id. § 405(g).

"The burden is on the moving party . . . to make an initial showing of cause" to lift the stay. In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002). "If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990). Plaintiffs bear the initial burden of establishing cause to lift the stay.

The Bankruptcy Code, which PROMESA parallels in some respects, "does not define "cause." Generally speaking, however, "cause" is said to exist when the harm that would result

from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted." <u>Peerless Ins. Co. v. Rivera</u>, 208 B.R. 313, 315 (D.R.I. 1997); <u>see also</u> <u>In re Opelika Mfg. Corp.</u>, 66 B.R. 444, 448 (Bankr. N.D. Ill. 1986) ("Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors.").

As explained by the First Circuit Court of Appeals in the bankruptcy context, "a hearing on a motion for relief from stay is merely a summary proceeding of limited effect." <u>Grella v. Salem Five Cent Sav. Bank</u>, 42 F.3d 26, 33 (1st Cir. 1994). "[A] court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims." <u>Id</u>.

Although the PROMESA stay is modeled off the automatic stay established by § 362 of the Bankruptcy Code, PROMESA contains key differences from § 362 that are critical to the analysis here. Unlike § 362, § 405 of PROMESA makes no reference to adequate protection as cause to lift the stay.  That omission is neither accidental nor irrelevant, and it makes clear that Congress intended the PROMESA stay to operate differently from the automatic stay in the Bankruptcy Code.[2]

Had Congress sought to make "lack of adequate protection" a basis for lifting the PROMESA stay, it would have said so, just as it did in § 362 of the Bankruptcy Code.  <u>See, e.g.</u>,

---

[2] Defendants are cognizant of this Court's Memorandum and Order entered in Case No. 16-2365 at Dkt. No 74 and this Court's pronouncements regarding the concept of "cause" in the PROMESA context. Defendants respectfully disagree with the conclusion that lack of "adequate protection" constitutes "cause" to lift the PROMESA stay and reiterate their arguments in this regard in this separate action in order to preserve them.

<u>Helmer v. Goodyear Tire & Rubber Co.</u>, 828 F.3d 1195, 1202 (10th Cir. 2016) ("[I]f a legislature models an act on another statute but does not include a specific provision in the original, a strong presumption exists that the legislature **intended** to omit that provision.") (emphasis added). Indeed, it is well settled that "where words differ as they differ here, Congress acts intentionally and purposely in the disparate inclusion or exclusion." <u>Burlington N. & Santa Fe. Ry. v. White</u>, 548 U.S. 53, 62-63 (2006); <u>see also</u> <u>United States v. Azeem</u>, 946 F.2d 13, 17 (2d Cir. 1991) ("[C]ongressional consideration of an issue in one context, but not another, in the same or similar statutes implies that Congress intends to include that issue only where it has so indicated."). There can be no doubt that Congress enacted PROMESA with § 362 of the Bankruptcy Code expressly in mind. <u>See, e.g.</u>, PROMESA § 301(a), 48 U.S.C. § 2161(a) (applying 11 U.S.C. § 362 to cases brought under PROMESA). To argue that the elimination of any reference to adequate protection in § 405(e) has no effect would ignore the text of PROMESA as well as the intent of Congress.

PROMESA imposes its own standard of "cause." The first and most important indicator of its meaning is the words Congress used: Instead of allowing a court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest," 11 U.S.C. § 362(d)(1), Congress authorized a court to grant relief from the PROMESA stay only "for cause shown," PROMESA § 405(e)(2). That choice was meaningful, as Congress elsewhere carefully adopted standards from the Bankruptcy Code verbatim. <u>See, e.g.</u>, PROMESA § 405(g) (relief from PROMESA § 405(b) stay is appropriate without hearing if necessary to prevent irreparable damage to property that would occur before opportunity for hearing), <u>and</u> 11 U.S.C. § 362(f) (identical language under Bankruptcy Code's automatic stay).

And the language Congress chose—"for cause shown"—was not simply plucked from thin air, but instead drawn from the language in the Bankruptcy Act and Rule 11-44. <u>See</u> <u>Matter of</u>

Anchorage Boat Sales, Inc., 4 B.R. 635, 641 (Bankr. E.D.N.Y. 1980) ("The court may, for cause shown, terminate, annul, modify or condition such stay.") (quoting Fed. R. Bankr. P. 11-44(d) (emphasis added)).  Under that standard, a movant had an "initial burden to show irreparable harm" before he could obtain the lifting of the automatic bankruptcy stay.  See id. at 641 & n.6 (citing Collier on Bankruptcy § 363.06 (15th ed. 1979)).  And even that showing could be defeated by a debtor's "tipping of the equities" in favor of continuation of the stay.  See In re Rutter, 9 B.R. 878, 879 (Bankr. E.D. Pa. 1981) (internal quotation marks omitted).  PROMESA's legislative history suggests that Congress intended to adopt this irreparable damage requirement.  H.R. Rep. No. 114-602, pt. 1, at 51 (2016) ("If a party is determined to be subject to irreparable damage because of the imposition of the stay, the District Court is authorized to grant relief from the stay to such party.").  Thus, the text and legislative history of PROMESA counsel that the statute's standard for "cause" requires both an initial showing of irreparable harm and a conclusion of the Court that the balance of the equities weighs in favor of the movant rather than the debtor.  See In re Rutter, 9 B.R. at 879.[3]

The United States recently advocated for a similar standard.  See for example, Statement of Interest of the United States, Case No. 16-2510, Docket No. 45 at 7 ("In light of the unprecedented nature of PROMESA and the important purposes sought to be served by the automatic stay, a broad interpretation of the 'for cause' provision would 'frustrate Congress' manifest purpose' in enacting PROMESA. *United States v. Hayes*, 555 U.S. 415, 427 (2009). Similarly, the United States urges this Court to construe the 'for cause' provision as narrowly as possible in determining

---

[3] This interpretation also makes sense in light of the express provision for relief from the stay where irreparable harm would result before opportunity for notice and a hearing.  See PROMESA § 405(g).  The movant still bears the initial burden to show irreparable damage, but the court is relieved from its ordinary obligation to weigh the harms, as it would not yet have had the opportunity to hear from the Commonwealth about those harms.  Where the court has time to afford notice and a hearing, it makes sense to require both the showing of irreparable harm and an analysis of the equities.

whether 'cause' exists here. Circumstances typically found to constitute 'cause' in an ordinary bankruptcy proceeding may not be sufficient to establish 'cause' in the extraordinary posture of these cases before the Court."). Plaintiffs cannot satisfy this standard, as they will not suffer any irreparable harm from the continuation of the PROMESA stay for a few more months.

### B.      Plaintiffs have not shown cause to lift the stay

Plaintiffs' amended complaint is nothing more than a collection action dressed as a constitutional claim. Plaintiffs allege (1) that AMA failed to make principal and interest payments on the AMA Loan in December of 2015 (Dkt. No. 4 at ¶ 31); (2) that Scotiabank provided notice of default in January of 2016 (id. at ¶ 32); and (3) that on march 31, 2016 the AMA Loan allegedly "became due and payable in full, according to the terms of the Loan Agreement, in the principal amount of $28,249,666, together with unpaid interest, which continues accruing on a daily basis." Id. at ¶ 33. Plaintiffs' alleged "damages" are the result of the alleged default of a loan, are capable of being calculated with mathematical precision and are hence not irreparable. See K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989) ("[I]f money damages will fully alleviate harm, then the harm cannot be said to be irreparable."). Any claim of irreparable harm is also negated by the fact that, even though AMA allegedly defaulted on the AMA Loan in December of 2015, months before Act 21 or PROMESA were enacted, plaintiffs waited until mid-October of 2016, halfway through the PROMESA stay, to file an amended complaint and serve defendants with it.

Act 21 protects the value of plaintiffs' claim during any emergency period, requiring that AMA's obligation accrue interest at the contractual rate and, to the extent it comes due during the emergency period, be paid at the end of that period.  See Act 21, § 202. Act 21 also protects "the rights of a holder to any collateral, security interest or lien that secures" an obligation that "was

otherwise due or became due before or during an emergency period" and "becomes payable at the end of the covered period as a result of this Act." Id. § 204(a). PROMESA further provides that its interim stay "does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation." § 405(k). Accordingly, Plaintiffs have failed to show any harm to their claim during the interim stay.

Assuming arguendo that Plaintiffs could show a lien or security interest on the Cigarette Tax revenues, as alleged in the amended complaint, plaintiffs would not be able to establish any harm to that interest. PROMESA provides that "if any property of any territorial instrumentality . . . is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property . . . then the transferee shall be liable for the value of such property." PROMESA § 407(a). Moreover, PROMESA allows creditors to enforce that right "by bringing an action in the U.S. District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405." Id. § 407(b). To the extent any Commonwealth revenues are transferred in alleged violation of section 407(a) of PROMESA, Plaintiffs will be entitled to seek the value of said revenues in a future action.

In their amended complaint, plaintiffs claim they will suffer harm as a result of the alleged diversion and dissipation of the only collateral securing the AMA Loan (the Cigarette Tax revenues) and that there is "cause" to lift the stay due to an alleged lack of "adequate protection." Dkt. No. 4 at ¶¶ 50-52. However, even if lack of adequate protection were "cause" to lift the PROMESA stay, plaintiffs' interests are adequately protected. While plaintiffs' alleged claim against AMA is finite and calculable with mathematical precision, the revenue stream allegedly securing such a claim is continuous. Hence, any temporary lack of access to this revenue stream does not leave plaintiffs unprotected or otherwise deprive plaintiffs of their alleged collateral.

In the case of <u>Peaje Investments, LLC v. García Padilla</u>, Civil Case No. 16-2365, movants, who are allegedly the holders of bonds of the Puerto Rico Highways and Transportation Authority ("PRHTA") argued that there was cause to lift the PROMESA stay due to lack of "adequate protection" in certain toll revenues that allegedly secure their claims. These toll revenues, as well as the Cigarette Tax revenues at issue in this action, are a constant revenue stream received by the Commonwealth. In denying movants' request to lift the stay, the Court found that movants' interests were adequately protected. In so doing, this Court relied on §§ 204 and 405 of PROMESA, <u>supra</u>, and reasoned as follows:

> Because of these provisions, and because PRHTA'S pledged revenues are constantly replenished by an ongoing stream of toll payments, Peaje Investments continues to hold a security interest in a stable, recurring source of income that will eventually provide funds for the repayment of the PRHTA bonds. Though it will not receive the pledged revenues during the stay period, this enduring security interest means that it faces only a delay in recouping such funds, not a permanent loss of them.
>
> The Court believes that the existence of this continuing lien on a perpetual source of revenue satisfies the "flexible" standard applicable to determinations of adequate protection.

<u>Peaje Investments, LLC v. García Padilla</u>, 2016 WL 6562426 at *5-6 (D.P.R. 2016).

The rationale applied by this Court in <u>Peaje</u> is equally applicable in this case. The Cigarette Tax revenues, just like the toll revenues in <u>Peaje</u>, are a stable, recurring source of income that will eventually provide funds for the repayment of the AMA Loan. Hence, to the extent plaintiffs have an interest on such revenues, their interest is adequately protected throughout the duration of the PROMESA stay, which has already reached its midpoint.

### C. The harm to the Commonwealth of Puerto Rico and the public interest manifestly outweighs any harm allegedly suffered by plaintiffs as a result of the automatic stay.

PROMESA is an unprecedented federal statute designed to deal with a fiscal emergency affecting the Government of Puerto Rico and its instrumentalities.  PROMESA § 405(m). The stay

mandated by PROMESA "is essential to stabilize the region for the purposes of resolving this territorial crisis." Id. § 405(m)(5).  Some of the express purposes of the stay are to: "(1) provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis; (2) allow the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits; (3) provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring." Id. § 405(n).  Moreover, PROMESA "benefit[s] the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its long standing fiscal governance issues and return to economic growth." Id. § 405(n)(5). To lift the stay in this litigation would prevent the Commonwealth and Congress from accomplishing these goals.

Lifting the stay would also fly in the face of the choices that Congress made in enacting PROMESA.  Specifically, Congress chose to establish an Oversight Board for Puerto Rico and to vest that Oversight Board with the authority to approve Fiscal Plans (as defined in the Act) for the Commonwealth or its instrumentalities.  See PROMESA §§ 101(b)(2), 201.  It authorized the Board to provide recommendations relating to the effect of Puerto Rico laws and court orders on the operations of the government.  Id. § 205(a)(7).  And it authorized the Oversight Board, in its discretion, to exclude any instrumentality of the Government of Puerto Rico from the requirements of the Act.  Id. § 101(d)(2).  Rather than allow the Oversight Board to consider plaintiffs' claims in the context of the current fiscal emergency and the multiplicity of actions being filed against the Commonwealth and its instrumentalities, plaintiffs essentially ask this Court to pretermit the Oversight Board's review and foist its own decision upon the Commonwealth, severely impacting

the Commonwealth's ability to conduct its day to day operations in this time of fiscal crisis.  Plaintiffs' "every creditor for itself" approach is a far cry from PROMESA's requirement that cause be shown to lift the stay.

Regardless of the merits of plaintiffs' claims and the virtues or defects of Act 21, at this juncture, when the Oversight Board for Puerto Rico is in the midst of taking statutorily authorized action, the public interest mandates preserving the *status quo* and avoiding a rush to the courthouse or the premature dismantling of statutory provisions created to address the current fiscal emergency in Puerto Rico.  The glaring inconsistencies that arise from the multiplicity of bondholder and other creditor lawsuits that have been filed shortly before and in the wake of PROMESA underscore the need to preserve the current *status quo* and maintain the PROMESA stay until the Oversight Board takes action. For example, plaintiffs in this case allege that they have a security interest in Cigarette Tax revenues, while the plaintiffs in the case of <u>Lex Claims, LLC v. García Padilla</u>, Civil No. 16-2374, who are general obligations ("GO") bondholders, claim to have a "first lien" and priority over all Commonwealth expenditures. <u>See</u> Case No. 16-2374, Docket No. 78 at ¶ 5. The interplay between these and other claims requires a consolidated and comprehensive approach by the Oversight Board. The piecemeal litigation of these and other claims would defeat the purpose behind the enactment of PROMESA.

**WHEREFORE**, for the foregoing reasons, this action has been automatically stayed as a matter of law by section 405 of PROMESA. In the alternative, defendants respectfully request that the Court stay the piecemeal litigation and disposition of Counts 2-3 of the amended complaint in the exercise of its discretion and its inherent power to manage its docket. Defendants respectfully request that the Court grant them a period of twenty (20) days to answer the amended complaint or otherwise plead at the expiration of the stay or once the Court makes a determination regarding

the scope of the PROMESA stay and plaintiffs' request to lift the stay, to the extent plaintiffs' request is granted.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico, this 11th day of November, 2016.

**ANTONETTI MONTALVO & RAMIREZ COLL**
P.O. Box 13128
San Juan, PR 00908
Tel: (787) 977-0303
Fax: (787) 977-0323

**s/ Salvador Antonetti-Zequeira**
SALVADOR ANTONETTI-ZEQUEIRA
USDC-PR No. 113910
santonet@amrclaw.com

**s/ José L. Ramírez-Coll**
JOSÉ L. RAMÍREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com